UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL SONKISS by his Guardian,
BARBARA KRASNY,

      Plaintiff,

   v.

                               Case No. 05-CV-74519-DT

ENCOMPASS PROPERTY AND
CASUALTY COMPANY,

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S "MOTION FOR PARTIAL DISMISSAL AND PARTIAL SUMMARY JUDGMENT" AND SCHEDULING FINAL PRETRIAL CONFERENCE**

Pending before the court is Defendant Encompass Property and Casualty Company's "Motion for Partial Dismissal and Partial Summary Judgment," filed September 28, 2006. Having reviewed the matter, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

**I. BACKGROUND**

This lawsuit stems from an automobile accident which occurred on May 18, 2005. Plaintiff Nathaniel Sonkiss, by his Guardian, Barbara Krasny, seeks first party benefits under Michigan's no-fault act, Mich. Comp. Laws § 500.3101. There is no dispute that prior to the accident, Plaintiff suffered from numerous psychiatric conditions. Plaintiff alleges, however, that he sustained a closed-head injury in the

accident which exacerbated his previous psychiatric conditions and also resulted in cognitive changes. Plaintiff seeks recovery for expenses associated with his treatment at two residential facilities, Willowbrook Rehabilitation Services ("Willowbrook") and the Center for Comprehensive Services ("CCS").

Defendant asserts that "[t]he dispute in this matter centers on the Plaintiff's pre-accident condition and need for care, and the Plaintiff's post-accident condition and need for care." (Def.'s Mot. Br. at 4.) Defendant states that it has reviewed Plaintiff's history of psychiatric related deficiencies, and concluded that the accident did not cause or exacerbate any such conditions. (*Id.*) Defendant has therefore "declined to pay any medical expenses related to care, recovery, and the rehabilitation of the Plaintiff as it pertains to his psychiatric condition." (*Id.*)

Immediately following the accident on May 18, 2005, Plaintiff was taken by ambulance to Huron Valley Sinai Hospital. (Pl.'s Ex. C.) The hospital records indicate that while driving at a high rate of speed, Plaintiff suffered a seizure, became unresponsive, and thereafter struck three other vehicles. (*Id.* at 10). The records also indicate that Plaintiff's head had struck the windshield, causing a hole in the window. (*Id.*) Shortly after his treatment at Huron Valley Sinai, Plaintiff was transferred to the University of Michigan Medical Center. He received a "head CT which demonstrated a parafalcine subdural hematoma along with subdural blood layering along the tentoria." (Pl.'s Ex. D at 00010.) Plaintiff was discharged from the University of Michigan on June 8, 2005 and admitted to Willowbrook. Defendant states that it "paid for all expenses incurred by Plaintiff with respect to his treatment received at the University of Michigan Medical Center." (Def.'s Mot. Br. at 6.) Defendant apparently also paid for the

transportation costs associated with transferring Plaintiff from the University of Michigan to Willowbrook. (Pl.'s Ex. F.)

On the day Plaintiff was admitted to Willowbrook, Defendant's authorized representative, Terri Martin, signed an "Authorization of Services," which included a per diem rate agreement to cover, among other things, room and board. (Pl.'s Ex. G.) While at Willowbrook, Plaintiff was enlisted in their day program, in which he would receive treatment from Willowbrook during the day and live at one of Willowbrook's homes. (Pl.'s Dep. at 20, Def.'s Ex. J.) In December of 2005, Plaintiff was admitted to St. Joseph Mercy Hospital for cutting his wrists with a broken light bulb. (Def.'s Ex. I at 101.) He remained at St. Joseph's until March of 2006. (Pl.'s Dep. at 34, Def.'s Ex. J.) From March 2006 until May 2006, Plaintiff lived with his parents. According to Plaintiff, "Willowbrook allowed him to return to the day treatment program until he obtained a new residential program." (Pl.'s Br. at 3.)[1] While Plaintiff's guardian searched for a residential program which would accept him, his mother took two months off of work to stay home with Plaintiff. (*Id.*) Plaintiff asserts that the difficulty in finding a residential program stemmed from the fact that Defendant would not agree to pay for the program. (*Id.*)

In May 2006, Plaintiff was admitted in CCS in Florida. On September 27, 2006, CCS placed Plaintiff in their "apartment program," where he shares the apartment with

---

[1]Most of Plaintiff's factual assertions relevant to Plaintiff's situation while living at home are unsupported by a specific citation to the factual record. Because Plaintiff is not seeking room and board expenses for the period that he was living at home, however, these facts are not material to the inquiry before the court and are provided as background.

3

another CCS participant and has staff present from 4:00 p.m. until 8:00 a.m., and is at the main CCS campus from 8:00 a.m. until 4:00 p.m.  ("Case Management Summary" at 00001, Def.'s Ex. P.)  Plaintiff remains at CCS to date.

In Defendant's motion for partial summary judgment, Defendant focuses solely on those expenses associated with room and board at Willowbrook and CCS, and argues that Plaintiff is not entitled to reimbursement of those expenses because, according to Defendant, there is no established "explicit necessity" for those services. (Def.'s Mot. Br. at 4.)

## II.  STANDARD[2]

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not

---

[2]Although Defendant's motion is labeled a motion for summary judgment or for dismissal, the parties both rely on matters outside of the pleadings and the court will therefore analyze the motion under Federal Rule of Civil Procedure 56.

4

defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict–'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (citation omitted)).  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party.  *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

Michigan's no-fault statute provides that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."  Mich. Comp. Laws § 500.3105(1).  The statute further states that the insurer is required to pay "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care,

recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a). Interpreting these statutory provisions, the Michigan Supreme Court has stated that in order to receive benefits, the person's allowable expenses must be causally connected to the his injury. *Griffith v. State Farm Mut. Auto. Ins. Co.*, 697 N.W.2d 895, 901 (Mich. 2005). The *Griffith* court specifically held that Mich. Comp. Laws § 500.3105(1) imposes two causation requirements. First, the claimed benefits must be causally connected to the accidental bodily injury. *Griffith*, 697 N.W.2d at 901. Second, the injury must be causally connected to automobile accident. *Id.*

In this case, the court finds sufficient facts to create a triable issue with respect to both prongs of the *Griffith* test. Defendant challenges Plaintiff's request for room and board benefits at Willowbrook and CCS. There is evidence, however, on which a reasonable jury could rely to conclude both that Plaintiff's alleged need for residential care arises out of his injury and that his injury arises out of the May 2005 automobile accident. Plaintiff's pre-existing psychiatric condition admittedly makes it difficult to determine what medical conditions and needs were present before the accident, and what medical conditions and needs arose out of the accident. Nonetheless, where there is sufficient evidence supporting Plaintiff's theory, it is not for this court to sort and weigh the evidence. *Sagan*, 342 F.3d at 497 (6th Cir. 2003).

Here, Plaintiff has produced evidence on which a reasonable jury could conclude that the accident exacerbated his pre-existing condition and that his current condition reasonably requires residential care. In July of 2005, while at Willowbrook, Plaintiff was

6

examined by Dr. Norman Fichtenberg, of the Rehabilitation Institute of Michigan.[3]  While Dr. Fichtenberg made various notations regarding Plaintiff's pre-existing conditions, he also noted:

> [T]he superimposing of a brain injury upon pre-existing character pathology does not negate the role of brain injury as a major determinant of current neurocognitive impairment.  In fact, there may be an interaction between the brain dysfunction and the premorbid personality as the former magnifies and exacerbates the latter.  At this point–less than 3 months status post a major brain injury–neurocognitive problems must be viewed as primarily attributable to acquired organic defeicits.

(Fichtenberg Report at 5, Def.'s Ex. D.)  Dr. Fichtenberg further stated that, because his evaluation "clearly demonstrate[d] resolution of brain injury sequelae has not yet occurred . . . [Plaintiff] is in need of continued neurorehabilitation, such as he is currently receiving at WillowBrook."  (*Id.* at 7.)  On August 8, 2005 and September 12, 2005, Dr. John Mesaros examined Plaintiff and recommended that he continue in the full Willowbrook program.  (Mesaros letters, Pl.'s Ex. O.)   In a January 6, 2006 letter, Dr. David Beltzman wrote that, while Plaintiff had emotional problems prior to the accident, Plaintiff "suffers from a psychotic disorder which is attributable to his traumatic brain injury of May, 2005."  (Beltzman Letter, Pl.'s Ex. M.)  Dr. Beltzman indicated that because Plaintiff remained in a "chronic state of potentially killing himself[4] . . . he requires living in a structured living setting."  (*Id.*)  On May 1, 2006, Dr. Gerald A. Shiener examined Plaintiff.  (Shiener letter at 1, Pl.'s Ex. P.)  The following day Dr.

---

[3]According to Plaintiff, Dr. Fichtenberg examined Plaintiff at Defendant's request. (Pl.'s Br. at 2.)

[4]There is evidence on which a jury could conclude that Plaintiff has made at least two suicide attempts since the May, 2005 accident.  (Shiener letter at 2, Pl.'s Ex. P.)

Shiener issued a ten-page report in which he concluded that Plaintiff suffered "from a serious neurologic impairment that arises out of injuries sustained in his auto accident, and that . . . his behavioral difficulties are qualitatively different from those described premorbidly in his treatment with Dr. Michaels." (*Id.* at 10.)[5]  He further stated:

> I would recommend that [Plaintiff] receive 24-hour supervision and attendant care for his own safety, given that his judgement and insight are markedly impaired and are the most significant of his impairments.  I would further recommend he continue to receive occupational therapy, vocational therapy, and other modalities of speech therapy to address his other deficits as described in the treatment programs at the Willowbrook Day Care Center.  The persistence of symptomatology coming up on one year after his injury portends a guarded prognosis for further recovery.

(*Id.*)  Dr. Owen Perlman examined Plaintiff on October 5, 2006, and recommended that he continue to receive treatment at CCS. (Perlman Report at 2, Pl.'s Ex. N.)

In light of this medical evidence, the court finds a triable issue of fact as to whether Plaintiff's psychiatric condition arises from the May 2005 accident and whether that condition reasonably requires residential care.  Thus, under *Griffith*, Plaintiff can proceed to trial on his request for room and board expenses from Willowbrook and CCS.  *See Griffith*, 697 N.W.2d at 901.  Defendant, however, argues that room and board expenses are not recoverable under *Griffith* as a matter of law.  The court disagrees.

In *Griffith*, the Michigan Supreme Court analyzed whether food expenses were recoverable for an insured receiving at-home care.  *Id.* at 897.  After reviewing the statutory language of the no-fault act, the court found that food expenses were not

---

[5]Indeed, Dr. Alvin Michaels, who treated Plaintiff for his pre-existing conditions, testified that prior to the accident, Plaintiff was not in need of residential care.  (Michaels Dep. at 49, 51, Pl.'s Ex. J.)

recoverable for at-home care, because home food expenses are not related to an injured person's "care, recovery, or rehabilitation." *Id.* at 903 (quoting Mich. Comp. Laws § 500.3107(1)(a)).  The *Griffith* court reasoned:

> There is no evidence introduced that [the plaintiff] now requires different food than he did before sustaining his injuries as part of his treatment plan.  While such expenses are no doubt necessary for his *survival*, they are not necessary for his recovery or rehabilitation fro the injuries suffered in the accident, nor are they necessary for his care because of the injuries he sustained in the accident.

*Id.*  The *Griffith* decision has been interpreted to preclude recovery of normal "room" costs, as well as "board" costs, when an individual is residing and receiving care at home.  *See, e.g., Anthony v. Citizens Ins. Co.,* No. 05-508122  2006 WL 2987619, at *3 (Mich. Ct. App. 2006) ("To the extent that plaintiff establishes that the expenses are reasonably necessary for her care, recovery, or rehabilitation as a result of the injuries she sustained in the 1993 motor vehicle accident, she is entitled to recover for the accommodations necessitated by the injury, as well as food costs if care is provided in an institutional setting."); *see also Peabody v. State Farm Mut. Auto. Ins. Co.*, No. 04-73787, 2006 WL 54426, at *4 (E.D. Mich. Jan. 10, 2006); *Jimkoski v. State Farm Mut. Auto. Ins. Co.,* No. 02-71701  2005 WL 2837377, at * 3 (E.D. Mich. Oct. 27, 2005)

      To this court's knowledge, *Griffith* has never been extended to bar recovery of room or board costs in an institutional setting where, as here, Plaintiff alleges that the institutionalized care is reasonably necessary to treat his injury.  Indeed, *Griffith* itself expressly contrasted a home situation with an institutionalized situation.

> Food costs in an institutional setting are "benefits for accidental bodily injury" and are "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  That is, it is "reasonably necessary" for an insured to consume hospital

9

> food during in-patient treatment given the limited dining options available. Although an injured person would need to consume food regardless of his injuries, he would not need to eat that particular food or bear the cost associated with it. Thus, hospital food is analogous to a type of special diet or select diet necessary for an injured person's recovery. Because an insured in an institutional setting is required to eat "hospital food," such food costs are necessary for an insured's "care, recovery, or rehabilitation" while in such a setting. Once an injured person leaves the institutional setting, however, he may resume eating a normal diet just as he would have had he not suffered any injury and is no longer required to bear the costs of hospital food, which are part of the unqualified unit cost of hospital treatment.

*Griffith*, 697 N.W.2d at 904; *see also id.* at 904 n.14 ("[A]n injured person is required to eat hospital food precisely because his injuries require treatment in a hospital. By contrast, a person who eats a normal diet at home does not incur food expenses that meet the requirements of M.C.L. § 500.3105(1) and M.C.L. § 500.3107(1)(a)."). The lesson from *Griffith* appears to this court fairly straightforward: if an insured requires residential care for injuries arising out of an automobile accident, the room and board costs are an "allowable expense." Mich. Comp. Laws § 500.3105(1); Mich. Comp. Laws § 500.3107(1)(a). Because living at home and eating food which is not medically required are expenses which would be incurred before an accident, such expenses are not recoverable. *Griffith*, 697 N.W.2d at 903. If, however, residing in an institution, and therefore necessarily eating specified food in that institution, are reasonably required, Plaintiff may recover room and board expenses. *Id.* at 904 n.14. Because Plaintiff presents a question of fact on this issue, the jury will decide whether Plaintiff may recover.

Defendant attempts to extend *Griffith* to the facts of this case, by arguing that (1) Plaintiff's alleged need for residential care did not arise from his injury sustained in the

accident, but was present prior to the accident and (2) that Plaintiff could receive acceptable care living at home with an attendant.  With respect to the first argument, the court has already found that a triable issue of fact exists concerning whether Plaintiff's need for residential care arose from pre-existing or post-accident medical conditions.  Likewise, in light of the medical evidence recommending institutionalized care, the court is not persuaded that Plaintiff should be required as a matter of law to receive his treatment at home.  Moreover, Plaintiff has presented no authority for the proposition that an insured's parents are *obligated* to care for their son, as they did *voluntarily* and temporarily in the Spring of 2006.[6]

The court also rejects the argument that the fact that Plaintiff is participating in CCS's "apartment program" establishes that he does not need residential care.  First, Plaintiff only recently was admitted into the "apartment program," and this new development does not necessarily have any bearing on his prior living requirements.  More importantly, however, Defendant has not shown that the "apartment program" is equivalent to an at-home living situation.  Indeed, the evidence which has been submitted to the court suggests the opposite.  Plaintiff shares his apartment with another CCS participant, has staff present from 4:00 p.m. until 8:00 a.m., and is at the main CCS campus from 8:00 a.m. until 4:00 p.m.  ("Case Management Summary" at

---

[6]According to Plaintiff's medical records, his date of birth is August 20, 1982, making him 22 years old at the time of the accident and 24 years old now.  (Pl.'s Ex. D at 1.)

11

00001, Def.'s Ex. P.)  At a minimum, there is a triable issue with respect to whether Plaintiff's living situation is more comparable to an institutionalized setting.[7]

Accordingly, is satisfied that Plaintiff has established sufficient evidence on which a jury could conclude that he is entitled to his room and board expenses while at Willowbrook and CCS.   Defendant's motion will therefore be denied.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's "Motion for Partial Dismissal and Partial Summary Judgment" [Dkt. # 30] is DENIED.

IT IS FURTHER ORDERED that the court will conduct a final pretrial conference on **December 4, 2006 at 2:00 p.m**.  Party representatives with full settlement authority are required to attend.  All pretrial documents, as described in the court's April 14, 2006 Scheduling Order at ¶¶ 7, 8, 9 and 13, shall be submitted by **November 30, 2006**.  This case is placed on the December trailing docket.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 16, 2006

---

[7]The court notes that it is possible that the evidence at trial may establish that Plaintiff cannot recover his food costs while in the apartment program if, for example, he is allowed to do his own grocery shopping.  This fact has not been established, at this point, as a matter of law and, in any event, represents only a small fraction of the room and board costs that Plaintiff seeks.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 16, 2006, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\05-74519.SONKISS.SJ.NoFaultRoomandBoard.wpd